**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01658-RMR-STV

YUNIEL PEREZ DELGADO; *et al.*,

Plaintiffs,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES; *et al.*,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Chief Magistrate Judge Scott T. Varholak

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (the "Preliminary Injunction Motion") [#33] and Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (the "Motion to Dismiss") [#38] (collectively, the "Motions"). The Motions have been referred to this Court [##40, 42]. This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Preliminary Injunction Motion be **GRANTED IN PART AND DENIED IN PART** and that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND[1]

Plaintiffs are 11 Cuban nationals and citizens. [#28 at ¶¶ 2, 10-21] Plaintiffs were lawfully paroled into the United States at various times between the dates of April 8, 2022, and August 9, 2024. [*Id.* at ¶¶ 11-21] Plaintiffs have maintained a continuous physical presence in the United States for periods ranging from just over two years to over four and a half years. [*Id.*] Plaintiffs have all filed Cuban Adjustment Act ("CAA") petitions and Employment Authorization Document ("EAD") petitions.[2] [*Id.*] Plaintiffs' CAA petitions have been pending for periods ranging between approximately 13 months and 41 months. [*Id.*] Some Plaintiffs' EAD petitions are no longer pending. [*Id.* at ¶¶ 10-11, 13, 17] Details as to the disposition of these petitions were not provided. Of the Plaintiffs that have outstanding EAD petitions, the petitions have been pending for periods ranging between approximately nine months and 21 months. [*Id.* at ¶¶ 12, 14-16, 18-21]

Because of these delays, Plaintiffs have been unable to obtain Lawful Permanent Resident ("LPR") status. [*Id.* at ¶ 5] Additionally, Plaintiffs face gaps in employment authorization that have cost them jobs, income, professional opportunities, and the ability

---

[1] The facts are drawn from the allegations in Plaintiffs' Second Amended Complaint (the "Complaint") [#28], which must be taken as true when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

[2] The CAA petition referred to in the Complaint is a Form I-485 Application. Form I-485 is available for individuals in the United States to apply for Lawful Permanent Resident status, also referred to as a "Green Card." U.S. CITIZENSHIP AND IMMIGR. SERVS., Instructions for Application to Register Permanent Residence or Adjust Status, at 2, *available at* https://www.uscis.gov/sites/default/files/document/forms/i-485instr.pdf (last accessed Oct. 28, 2026). The EAD petition is a Form I-765 application. The EAD itself is the card issued as evidence that the holder is authorized to work in the United States. U.S. CITIZENSHIP AND IMMIGR. SERVS., Instructions for Application for Employment Authorization, at 1, *available at* https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf (last accessed Oct. 28, 2026).

to support themselves and their families. [*Id.*] Plaintiffs are restricted in their ability to travel, unable to plan their futures, and have limited stability and legal security. [*Id.*]

Based on these facts, Plaintiffs assert five claims for relief. First, they assert a claim for violation of the Administrative Procedure Act ("APA") for Defendants' failure to adjudicate Plaintiffs' CAA petitions within a reasonable time. [*Id.* at ¶¶ 86-93] Second, Plaintiffs assert a claim for violation of the APA for Defendants' failure to adjudicate Plaintiffs' EAD petitions within a reasonable time. [*Id.* at ¶¶ 94-99] Plaintiffs third and fourth claims are brought under the Mandamus Act also arguing that Defendants have unreasonably delayed processing of Plaintiffs' CAA and EAD petitions. [*Id.* at ¶¶ 100-109] Plaintiffs assert a fifth claim for violation of the APA in which they argue that Defendants' ongoing implementation of their Benefits Hold Policy, explained in greater detail below, violates their obligations under the APA. [*Id.* at ¶¶ 110-120]

Plaintiffs seek relief in the following forms: (1) a declaration that United States Citizenship and Immigration Services ("USCIS") has unreasonably delayed and unlawfully withheld adjudication of Plaintiffs' petitions in violation of the law; (2) an order and/or writ requiring that USCIS adjudicate each of the pending petitions by a date set by the Court; (3) an order indicating that the Court retains jurisdiction over this matter to ensure compliance with Court orders; and (4) reasonable attorneys' fees. [*Id.* at ¶ 6] On July 1, 2026, Plaintiffs filed their Preliminary Injunction Motion. [#33] Defendants have responded [#39] and Plaintiffs have replied [#43]. On August 7, 2026, Defendants filed their Motion to Dismiss. [#38] Plaintiffs have responded [#47] and Defendants have replied [#51].

## II. POLICY BACKGROUND

The CAA provides that Cuban natives and citizens who have been physically present in the United States for a certain length of time may be adjusted by proper officials, in their discretion and under such regulations as they may prescribe, to that of a noncitizen lawfully admitted for permanent residence if the noncitizen applies for such adjustment, is eligible, and is admissible for permanent residence. Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161. Notably, "[t]he [CAA], passed in 1966, has the 'somewhat anomalous status' of having been 'codified in the U.S. Code as a "historical note" to [8 U.S.C.] § 1255.'" *Concepcion v. Mullin*, No. 25-cv-03221-DMS-MMP, 2026 WL 1388761, at *12 (S.D. Cal. May 18, 2026) (quoting *Daniel v. Castro*, 662 F. App'x 645, 648 (11th Cir. 2016)).

On December 2, 2025, USCIS issued a Policy Memorandum entitled "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries." U.S. Citizenship & Immigr. Servs., PM-602-0192, Hold and Review of All Pending Asylum Applications and All USCIS Benefit Applications Filed by Aliens from High-Risk Countries (Dec. 2, 2025) ("PM-602-0192"), *available at* https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf (last accessed October 28, 2026). The Memorandum placed all pending benefit requests on hold for noncitizens from countries listed in Presidential Proclamation 10949 regardless of the noncitizen's date of entry. *Id.* Presidential Proclamation 10949 indicated that entry of nationals from certain countries, including Cuba, should be restricted. *See* Exec. Order No. 10949, 90 Fed. Reg. 24497 (June 4, 2025) ("Proclamation 10949"), *available at*

https://www.federalregister.gov/documents/2025/06/10/2025-10669/restricting-the-entry-of-foreign-nationals-to-protect-the-united-states-from-foreign-terrorists-and (last accessed October 28, 2026). The stated purpose of these measures was to allow the USCIS to "address vulnerabilities" and "conduct a comprehensive review of all policies, procedures, and guidance" in light of national security and public safety concerns. PM-602-0192 at 2.

On January 1, 2026, USCIS issued PM-602-0194,[3] which again placed a hold on pending benefit applications for noncitizens from certain countries. U.S. Citizenship & Immigr. Servs., PM-602-0194, Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries (Jan. 1, 2026) ("PM-602-0194"), *available at* https://www.adhikarilaw.com/wp-content/uploads/2026/06/USCIS-PM-602-0194_-Hold-and-Review-of-USCIS-Benefit-Applications-from-High-Risk-Countries_January-2026.pdf (last accessed October 28, 2026). These countries were identified in Presidential Proclamation 10998, a Proclamation expanding entry restrictions to cover 39 countries and narrowing certain categorical exceptions; the Proclamation again listed Cuba as restricted. *See* Exec. Order No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025) ("Proclamation 10998"), *available at* https://www.federalregister.gov/documents/2025/12/19/2025-23570/restricting-and-limiting-the-entry-of-foreign-nationals-to-protect-the-security-of-the-united-states (last accessed October 28, 2026). PM-602-0194 further defined the "hold" put in place by USCIS as "allow[ing] a case to proceed through processing, up to final adjudication"

---

[3] PM-602-0192 and PM-602-0194 are collectively referred to as the "Policy Memoranda." The policy created by the Policy Memoranda is referred to as the "Benefits Hold Policy."

without "a final decision on a case, such as an approval, denial, or dismissal." PM-602-0194 at 1 n.2.

On May 21, 2026, USCIS issued PM-602-0199 which operated to "remind[ ] officers and the public that adjustment of status under section 245 of the Immigration and Nationality Act (INA) is a matter of discretion and administrative grace not designed to supersede the regular consular processing of immigrant visas." U.S. Citizenship & Immigr. Servs., PM-602-0194, Adjustment of Status is a Matter of Discretion and Administrative Grace, and an Extraordinary Relief that Permits Applicants to Dispense with the Ordinary Consular Visa Process, at 1 (May 21, 2026) ("PM-602-199"), *available at* https://www.uscis.gov/sites/default/files/document/memos/PM-602-0199-AdjustmentOfStatusAndDiscretion-20260521.pdf (last accessed October 28, 2026). The USCIS reiterated that the authority to adjust the status of noncitizens "must be exercised with the utmost caution and with a view towards national interests." *Id.* at 2.

On June 5, 2026, the District of Rhode Island entered a detailed opinion vacating USCIS's Benefits Hold Policy, which the Court described as "USCIS's decision to place a hold on all adjudications of immigration benefit requests submitted by people" from certain countries including Cuba. *See Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs. (Dorcas I)*, 834 F. Supp. 3d 242, 271 (D.R.I. 2026). Following this ruling, USCIS announced that it would no longer be enforcing the hold policy.[4] U.S. CITIZENSHIP AND IMMIGR. SERVS., Court Order on Hold Policies, *available at* https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies (last accessed Oct.

[4] This action was filed on April 17, 2026 [#1], prior to *Dorcas I* and USCIS's subsequent announcement.

28, 2026). USCIS specifically found that the *Dorcas I*'s order vacated PM 602-0192 and PM 602-0194 and indicated that both should be treated as if they are not in effect. *Id.*

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When reviewing a facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the amended complaint to be true." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

### B. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

# IV. ANALYSIS

## A. Motion to Dismiss

The Court begins with the Motion to Dismiss.

### 1. Claims One and Two: APA

Defendants argue that Claims One and Two under section 706(1) of the APA should be dismissed because Plaintiffs have failed to identify delay of a discrete action that USCIS is required to take. [#38 at 8[5]] Particularly, Defendants argue that the timeline for processing adjustment applications and EAD applications is left to the discretion of USCIS and thus is not reviewable under the APA. [*Id.* at 9-11]

#### a. 8 U.S.C. § 1252(a)(2)(B)(ii)

Courts have no jurisdiction to review "any . . . decision or action of [proper officials] the authority for which is specified under this subchapter to be in the discretion of [such proper officials]." 8 U.S.C. § 1252(a)(2)(B)(ii).[6] Defendants argue that "the process of adjusting the status of an immigrant to permanent residence under the CAA is expressly committed to the Attorney General's discretion." [#38 at 8] Defendants similarly argue that adjudication of EAD applications is entirely discretionary. [*Id.* at 10-11]

---

[5] For consistency and clarity, the Court refers to the actual page number of the .pdf document uploaded to the Electronic Court Filing system, rather than to the numbering printed on each page, for all page numbers on all filed documents.

[6] Defendants do not argue that 8 U.S.C. § 1252(a)(2)(B)(ii) applies to the CAA context. [#51 at 6-7] This is presumably because the CAA was not codified as a part of the INA. As previously described, the CAA is a "historical note" to a statute, not a statute itself. Therefore, decisions or actions made as to CAA applications are not specified *under the INA* to be in the discretion of proper officials. Nevertheless, the Court discusses 8 U.S.C. § 1252(a)(2)(B)(ii) because it provides background on jurisdiction and several of the cases cited by Defendants.

In this case, the CAA contains nearly identical language to 8 U.S.C. § 1255(a), which permits proper officials "to adjust a noncitizen's status 'in [their] discretion and under such regulations as [they] may prescribe,' so long as the noncitizen applied, is eligible for an immigrant visa and admissible, and there is a visa immediately available to them upon filing." *Concepcion*, 2026 WL 1388761, at *4 (quoting 8 U.S.C. § 1255(a)). The CAA removes the requirement that a visa be immediately available to the applicant at the time of filing. *See* Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161. Additionally, "[t]he approval of [I-765 applications] [is] within the discretion of the USCIS." 8 C.F.R. § 274a.13(a)(1). The statutes and regulations relevant to CAA and EAD applications provide no time frame governing when these applications must be adjudicated.

Application of Section 1252(a)(2)(B)(ii) to claims for unreasonable delay of adjudication of adjustment of status petitions has a complicated history and has not been addressed in the same manner by all courts. To properly address this history, the Court first must consider the United States Supreme Court's holding in *Patel v. Garland*, 596 U.S. 328 (2022). In *Patel*, the Supreme Court considered what the term "judgment" meant in the context of the Section 1252(a)(2)(B)(i) jurisdiction stripping provision. *Id.* at 337. This provision strips courts of jurisdiction to review "any judgment regarding the grant of relief under [S]ection . . . 1255." 8 U.S.C. § 1252(a)(2)(B)(i). The Supreme Court held that the term "'any' means that the provision applies to judgments 'of whatever kind' under [Section] 1255, not just discretionary judgments or the last-in-time judgment." *Patel*, 596 U.S. at 338 (citing *U.S. v. Gonzales*, 520 U.S. 1, 5 (1997)). The jurisdiction stripping

provision was thus held to apply not just to the granting of relief, but also to "any judgment *relating to* the granting of relief." *Id.* at 339 (emphasis in original).

Though *Patel* addressed the language of Section 1252(a)(2)(B)(i), circuits that have since considered delays in adjustment of status have found that the *Patel* decision "endorsed an expansive reading of [Section] 1252(a)(2)(B)" generally, including Section 1252(a)(2)(B)(ii). *Cheejati v. Blinken*, 106 F.4th 388, 393 (5th Cir. 2024). Indeed, the Third, Fourth, Fifth, Eighth, and Eleventh Circuits have held "that [Section] 1252(a)(2)(B)(ii) precludes jurisdiction over challenges to USCIS delays in adjudicating Form I-485 adjustment of status applications." *Kanapuram v. Dir., U.S. Citizenship and Immigr. Servs.*, 131 F.4th 1302, 1306-07 (11th Cir. 2025); *see also Geda v. Dir., US Citizenship & Immigr. Servs.*, 126 F.4th 835, 845–47 (3rd Cir. 2025); *Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025); *Cheejati*, 106 F.4th at 394–96; *Thigulla v. Jaddou*, 94 F.4th 770, 777–78 (8th Cir. 2024).

However, the circuit courts addressing this issue were not considering delays caused by the Policy Memoranda at issue here. Rather, these circuit courts addressed adjudication delays due to USCIS's policy of deferring adjudication of certain applications when demand is higher than estimated for limited LPR visa availability. *See*, *e.g.*, *Thigulla*, 94 F.4th at 772; *Geda*, 126 F.4th at 840. Some courts have nevertheless followed the circuit rulings and found that courts have no jurisdiction over APA claims related to the benefits applications affected by the Policy Memoranda at issue here. *See Acosta Reynoso v. U.S. Citizenship and Immigr. Servs.*, No. 8:26-cv-1314-KKM-NHA, 2026 WL 1917108, at *4 (M.D. Fla. July 3, 2026). Yet other courts have held the opposite. For example, the Southern District of Ohio reasoned that Section 1252(a)(2)(B)(ii)

deprives jurisdiction for individualized forms of discretionary relief, not widespread policies like those issued in PM-602-0192 and PM-602-0194. *Doe v. Edlow*, 836 F.Supp.3d 775, 805 (S.D. Ohio 2026). Further, the court noted:

> Section 1255(a) provides discretion for [proper officials] to adjust the status of an individual foreign national to that of permanent resident, if certain conditions are met. Nowhere does it confer complete discretion for USCIS or DHS to enact blanket adjudicatory holds for *all* foreign nationals from certain countries.

*Id.* at 805-06 (emphasis in original). Other courts have similarly found that Section 1252(a)(2)(B)(ii) does not divest courts of jurisdiction to hear claims related to the Policy Memoranda and have explicitly distinguished *Kale*, *Geda*, *Cheejati*, *Thigulla*, and *Kanapuram*. *See, e.g.*, *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *9-10 (D. Mass. Apr. 30, 2026); *Saghafi v. Edlow*, No. GLR-26-100, 2026 WL 1127468, at *4 (D. Md. Apr. 24, 2026). Indeed, even after USCIS announced that the policies at issue here would be treated as if no longer in effect, district courts nevertheless have granted preliminary injunctions requiring that plaintiffs impacted by the Policy Memoranda have their applications "adjudicated in the normal course of USCIS's process." *See, e.g.*, *Red Eagle Law, L.C. v. Edlow*, No. 26-cv-04850-CRB, 2026 WL 2476424, at *6 (N.D. Cal. Aug. 24, 2026). The Court provides this information as background and agrees with the parties that Section 1252(a)(2)(B)(ii) does not apply to the claims at issue here.

**b. 5 U.S.C. § 706**

"The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 702). "Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'" *Id.* at 61-62 (quoting 5 U.S.C. § 704)

(emphasis in original). "'[A]gency action' is defined in § 551(13) to include 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Id.* at 62 (emphasis omitted). "The APA provides relief for a failure to act in § 706(1): 'The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.'" *Id.* (quoting 5 U.S.C. § 706(1)).

Courts are thus limited by the term "unlawfully withheld" in the sense that "the only agency action that can be compelled under the APA is action legally *required*." *Id.* at 63 (emphasis in original). As a result, a plaintiff making a claim under section 706(1) must show "that the defendant (1) had a nondiscretionary duty to act, and (2) unreasonably delayed in acting on that duty." *Mendez v. Chertoff*, No. CIV-07-1402-M, 2008 WL 11337961, at *2 (W.D. Okla. July 30, 2008) (citing *Norton*, 542 U.S. at 63-65).

The challenged action in this case is USCIS's decision to place a hold on Plaintiffs' I-485 and I-765 applications based on their country of origin. While "the *decision* . . . to grant or deny adjustment of status is a non-reviewable exercise of discretion" the USCIS still "has a non-discretionary duty to make *some* determination." *Kim v. U.S. Citizenship and Immigr. Servs.*, 551 F. Supp. 2d 1258, 1262 (D. Colo. 2008) (emphasis in original); *see also Red Eagle Law*, 2026 WL 2476424, at *5 ("USCIS's 'discretion in how to sequence and consider immigration benefit applications . . . does not excuse USCIS from its mandatory obligation to adjudicate . . . applications at some point.'" (quoting *Sareminaeni v. Mullin*, No. 25-CV-09238-LJC, 2026 WL 1896217, at *2 (N.D. Cal. July 1, 2026))); *Sadighi v. Edlow*, No. 26-cv-02494-CRB, 2026 WL 2020999, at *3 (N.D. Cal. July 13, 2026) (same). Section 1255 does not vest discretion to refuse to adjudicate a benefit petition. *Kim*, 551 F. Supp. 2d at 1262.

This conclusion is further supported by the fact that regulatory provisions specify exactly when and how adjudication of immigration applications may be withheld. *Id.* at 1263 (citing 8 C.F.R. § 103.2(b)(18)). If officials "had completely unfettered discretion to withhold processing or fail to adjudicate an application, such a detailed scheme governing who may make the decision to do so and how and when it will be reviewed would be unnecessary." *Id.* There is additionally a "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001) (citations omitted); *see also Liu v. Novak*, 509 F.Supp.2d 1, 7 (D.D.C. 2007) (noting that "there is a general presumption in favor of judicial review of administrative acts" and that "statutory ambiguities in immigration laws are resolved in favor of immigrants." (citations omitted)).[7]

Moreover, unlike in *Thigulla* and *Geda*, USCIS here did not simply place applications on hold temporarily due to demand being higher than the amount of visas statutorily available. Here, USCIS issued a blanket policy placing benefits applications on hold indefinitely for applicants from certain countries. The decision to halt review of these applications is not the same as the discretionary action of choosing whether to grant or deny the applications. For these reasons, the Court finds that Plaintiffs have plausibly alleged that Defendants have a nondiscretionary duty to act on their benefit applications.

Nonetheless, to state a valid APA claim, Plaintiffs must also show that Defendants have unreasonably delayed making some determination as to their benefit applications. *Mendez*, 2008 WL 11337961, at *2. Defendants argue that Plaintiffs failed to plausibly allege this prong of their unreasonable delay claim. [#38 at 11-16] The APA gives courts

[7] And many other courts have found that the Policy Memoranda at issue here are reviewable. *See Sepehri v. Mullin*, No. 1:26-CV-239-HAB-ALT, 2026 WL 1678050, at *2 (N.D. Ind. June 9, 2026) (collecting cases).

the discretion to determine whether an agency delay is unreasonable. *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1075 (10th Cir. 2014) (citing *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999)). The issue of unreasonable delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful." *Wyandotte Nation v. Salazar*, 939 F. Supp. 2d 1137, 1148 (D. Wyo. 2013) (quoting *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Rather, the issue is whether the duration of time the agency has taken "satisfies the rule of reason." *Id.* at 1148-49 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102). And "the Tenth Circuit [has] determined . . . that, when an agency has no 'concrete deadline establishing a date by which it must act,' the APA's 'general admonition' that agencies act 'within a reasonable time' controls." *Glenwood Springs Citizens' All. v. U.S. Dep't of the Interior*, 639 F.Supp.3d 1168, 1183 (D. Colo. 2022) (quoting *Babbitt*, 174 F.3d at 1190).

The Tenth Circuit, using guidance from the United States Court of Appeals for the D.C. Circuit, has identified the following factors to guide courts in determining whether an agency has unreasonably delayed an action: "(1) the extent of the delay, (2) the reasonableness of the delay in the context of the legislation authorizing agency action, (3) the consequences of the delay, and (4) administrative difficulties bearing on the agency's ability to resolve an issue." *Qwest Commc'ns Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1239 (10th Cir. 2005) (citing *In re Chem. Workers Union*, 958 F.2d 1144, 1149-50 (D.C. Cir. 1992)). The Tenth Circuit expressly adds a fifth factor to this list: "consideration of the complexity of the task envisioned by a court's remand order." *Id.*

The Court finds it appropriate to note here that a "claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Azadani v. Gaudiosi*, No. 24-cv-00825-CNS, 2025 WL 35597, at *4 (D. Colo. Jan. 6, 2025) (quoting *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022)). Therefore, when "there is not enough information in the pleadings to adequately analyze" the *Qwest* factors, it is appropriate for a court to deny a defendant's motion to dismiss a plaintiff's APA claims. *Id.* The Court nevertheless provides an analysis of the *Qwest* factors here, using the facts the Court has before it, to determine whether Plaintiffs have stated a plausible claim for unreasonable delay.

First, the Court assesses the extent of the delay. Currently, Plaintiffs' CAA petitions have been pending for periods ranging between approximately 13 months and 41 months. [#28 at 11-21] Of the Plaintiffs that have outstanding EAD petitions, the petitions have been pending for periods ranging between approximately nine months and 21 months. [*Id.* at ¶¶ 12, 14-16, 18-21] "Although there is no specific statutory time requirement for the USCIS to adjudicate I-485 applications, Congress has set a normative expectation that a reasonable period is 'not later than 180 days after the initial filing of the application.'" *Al Karim v. Holder*, No. 08-cv-00671-REB, 2010 WL 1254840, at *3 n.8 (D. Colo. Mar. 29, 2010) (quoting 8 U.S.C. § 1571(b)). A pending duration of 13 months is over double this period, and 41 months is nearly seven times longer than the normative expectation. Additionally, Plaintiffs allege that the average median processing time in the relevant time frame for CAA applications was 6.5 months and the average median processing time in the relevant time frame for EAD applications based on I-485

applications did not exceed seven months. [#28 at ¶¶ 78-79] While Defendants are correct that median data does not absolutely prove unreasonable delay [#38 at 12-13], this information is still relevant to determining whether Plaintiffs have stated a plausible claim. Defendants cite various cases in which courts found that applications for adjustment of status had not been unreasonably delayed for periods less than five years, but the first of those cases was decided at the summary judgment stage in which the Court had a more substantial factual record before it, *see Irshad v. Johnson*, 754 F.3d 604, 605 (8th Cir. 2014), and the second addressed unreasonable delay of a different type of application than those sought by Plaintiffs here, *see Sawahreh v. U.S. Dep't of State*, 630 F.Supp.3d 155, 157 (D.D.C. 2022) (J-1 visa).[8] Accordingly, the Court finds these cases of little value when the Court has before it cases that are much closer comparators. For example, the Southern District of Ohio found that the "wholesale adjudicatory hold" placed on certain I-485 applications because of the Policy Memoranda "fundamentally conflict[s] with Congress's expected timeline." *Doe*, 836 F. Supp. 3d at 813. The court therefore found that this factor weighed slightly in favor of the applicants. Though not directly addressing the *Qwest* factors, other courts have found that plaintiffs in factual circumstances similar to those at issue here were likely to succeed on the merits of their unreasonable delay claims and were entitled to a preliminary injunction. *Red*

[8] Defendants also seem to suggest that delays less than five years are generally reasonable. [#38 at 13] But there is no bright-line rule as to when an agency's delay in acting becomes unreasonable. *Wyandotte Nation*, 939 F. Supp. 2d at 1148. Accordingly, the Court is not inclined to find that, because Plaintiffs' applications have been pending for only three and a half years or less instead of five, Plaintiffs have not plausibly alleged an unreasonable delay.

*Eagle Law*, 2026 WL 2476424, at *4-5 (collecting cases). Accordingly, the Court finds that factor one weighs slightly in favor of Plaintiffs.

Second, the Court considers the reasonableness of the delay in the context of the legislation authorizing agency action. Defendants correctly argue that there is no legislative directive mandating that all I-485 and I-765 applications be processed within a particular time frame. [#38 at 13-14] "However, the Tenth Circuit determined in *Forest Guardians v. Babbitt* that, when an agency has no 'concrete deadline establishing a date by which it must act,' the APA's 'general admonition' that agencies act 'within a reasonable time' controls." *Glenwood Springs Citizens' All.*, 639 F. Supp. 3d at 1183 (quoting *Babbitt*, 174 F.3d at 1190). As previously noted, Congress has provided the following policy statement: "processing of an immigration benefit should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Accordingly, the lack of a legislative directive as to the timeline for processing does not make Plaintiffs' claims implausible. Ultimately, this factor is neutral with respect to the unreasonable delay claim.

Third, the Court considers the consequences of the delay. Plaintiffs allege that they face gaps in employment authorization that have cost them jobs, income, professional opportunities, and the ability to support themselves and their families. [#28 at ¶ 5] Plaintiffs are restricted in their ability to travel, unable to plan their futures, and have limited stability and legal security. [*Id.*] Defendants argue that this factor nevertheless weighs against unreasonable delay because plaintiffs have not alleged medical or safety risks, lack of access to necessities, or immediate risk of deportation. [#38 at 14] The defendants in *Al Karim* made a similar argument, which was rejected by

the court. *Al Karim*, 2010 WL 1254840, at *4. And for good reason. As that court noted, the "indefinite nature of the delay in adjudicating [the plaintiff's] application has real and not insubstantial effects on [the] plaintiff's life and livelihood, including limitations on his ability to travel, potential negative consequences on his legal status as a refugee, and the financial and bureaucratic burdens of regularly filing travel and work applications." *Id.* The court therefore found that the third *Qwest* factor weighed in favor of the plaintiff. *Id.* Other courts have also found that consequences such as "fac[ing] loss of lawful employment, loss of immigration status, inability to travel and prolonged separation from family abroad" weighed in favor of the plaintiffs. *Doe*, 836 F. Supp. 3d at 814. And the Court is persuaded by these other district courts that lack of stability, the gaps in employment affecting Plaintiffs' professional opportunities and income, and Plaintiffs' inability to travel weigh in favor of Plaintiffs here.

As to the fourth and fifth factors, the Court addresses the administrative difficulties bearing on the agency's ability to resolve an issue and the complexity of the task envisioned by a court's remand order. The Court agrees with Defendants that it would be improper to order that Plaintiffs be put at the head of the queue for I-485 and I-765 applications, simply moving all other applicants back a space and producing no net gain. [#38 at 16] However, neither the Complaint nor Defendants allege any facts indicating that the requested relief would require this shifting. The pleadings fail to make clear how Defendants normally prioritize I-485 and I-765 applications, how long the "queue" is for the applications, or where Plaintiffs' places are within this "queue." Furthermore, Defendants point to no specific facts which would suggest that adjudicating I-485 and I-

765 applications involves a high level of complexity. Accordingly, the difficulties of the task are unclear and potentially outweighed by other *Qwest* factors.

The Court therefore finds that Plaintiffs have plausibly alleged unreasonable delay for purposes of Claims One and Two. Accordingly, the Court respectfully RECOMMENDS that the Motion to Dismiss be DENIED with respect to Claims One and Two.

**2. Claims Three and Four: Mandamus Act**

Defendants argue that Claims Three and Four should be dismissed because actions under the Mandamus Act are available only if a plaintiff has no other adequate remedy, and the APA provides such an alternative remedy. [#38 at 7] The Mandamus Act provides district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "To be eligible for mandamus relief, the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Zaglar*, 398 F.3d 1201, 1206 (10th Cir. 2005) (citing *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990)).

"Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive." *Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007); *see also Ali v. Frazier*, 575 F. Supp. 2d 1084, 1090 (D. Minn. 2008) (same); *Azzam v. Chertoff*, No. CV 07-6617 GAF (JTLx), 2008 WL 11419061, at *5 (C.D. Cal. Jan. 29, 2008) (same); *Qadir v. Gonzales*, No. 07-3741 (FLW), 2008 WL 2625314, at *3

(D.N.J. June 27, 2008) (same). Indeed, the duty of timeliness placed on Defendants, which Plaintiffs seek a writ of mandamus to enforce, arises under the APA. [*See* #28 at ¶¶ 103, 107]

The APA and the Mandamus Act are "different means of compelling an agency to take action which by law it is required to take." *Hernandez-Avalos v. INS*, 50 F.3d 842, 844 (10th Cir. 1996) (quotation omitted). Thus, it necessarily follows that where a plaintiff can properly bring a suit to compel an agency to take action under the APA, that plaintiff does not have "no other adequate remedy" as is required to bring an action under the Mandamus Act. *Rios*, 398 F.3d at 1206; *see also Ali*, 575 F. Supp. 2d at 1090 ("the APA itself provides a remedy for unlawfully delayed agency action, so plaintiffs in immigration-delay cases *have* a remedy available other than mandamus" (emphasis in original)). Indeed, the Tenth Circuit has noted that "[w]hen review by other means, such as under the APA, is possible, mandamus isn't available." *Audubon of Kan., Inc. v. United States Dep't of the Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023).

Plaintiffs agree that dismissal of the mandamus claims is appropriate where the Court concludes that the APA provides an adequate mechanism to compel agency action that is legally required and unreasonably delayed. [#47 at 14-15] And the Court so concludes here. Accordingly, a writ of mandamus is not available because Plaintiffs have an adequate alternative remedy. As a result, the Court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED as to Claims Three and Four and that Claims Three and Four be DISMISSED.

### 3. Claim Five: APA

In Claim Five, Plaintiffs allege that, at the time the Complaint was filed, the Benefits Hold Policy was in effect with no further guidance or clarification from Defendants as to when it would be lifted. [#28 at ¶ 115] Plaintiffs thus sought "relief in the form of an order requiring the Defendants to cease the implementation of the Benefits Hold Policy as to the Plaintiffs' pending CAA and EAD petitions." [*Id.* at ¶ 120] As previously described, after the Complaint was filed, USCIS announced that the Benefits Hold Policy of PM 602-0192 and PM 602-0194 should be treated as if they are not in effect. U.S. CITIZENSHIP AND IMMIGR. SERVS., Court Order on Hold Policies, https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies (last accessed Oct. 28, 2026). This was in response to the District of Rhode Island's *Dorcas I* opinion. *See Dorcas I,* 834 F. Supp. 3d at 242. The District of Rhode Island's order was appealed to the First Circuit, and the First Circuit denied the government's request for a stay pending appeal with respect to the Benefits Hold Policy. *Dorcas Int'l Inst. of R.I. v. U.S. Citizenship and Immigr. Servs. (Dorcas II)*, 186 F.4th 883, 884 (1st Cir. 2026).

Because the challenged policies are now being treated as no longer in effect, the Court agrees with Defendants that Claim Five is moot. [*See* #38 at 5] A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). A claim may become moot if "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (internal citations and

quotations omitted). The "burden of demonstrating mootness 'is a heavy one.'" *Id.* (quoting *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).

Here, Plaintiffs seek an order requiring the Defendants to cease the implementation of the Benefits Hold Policy. But there is no reasonable expectation that implementation will occur because, in the time between this suit being filed and now, USCIS announced that the policies should be treated as if no longer in effect. Admittedly, "[o]ne exception to a claim of mootness is a defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (quoting *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008)). "The rule that 'voluntary cessation of a challenged practice rarely moots a federal case . . . traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" *Id.* (quoting *Unified Sch. Dist. No. 259, Sedgwick Cnty. v. Disability Rts. Ctr. Of Kan.*, 491 F.3d 1143, 1149 (10th Cir. 2007)).

"Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.* (quoting *Davis*, 440 U.S. at 631). "[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id.* at 1115-16 (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005) (per curiam)). For example, courts have generally found that amendment or repeal of a

challenged ordinance or statute will moot a pending challenge to that ordinance, even when the legislative body has power to reenact it. *Id.* at 1116-17 (citations omitted). The Tenth Circuit has thus generally found that the voluntary-cessation exception does not apply when a legislature repeals or amends a statute after it is judicially challenged if "there is no evidence in the record to indicate that the legislature intends to reenact the prior version of the disputed statute." *Id.* at 1117 (quoting *Camfield v. City of Okla. City*, 248 F.3d 1214, 1223-24 (10th Cir. 2001)). "Likewise, the '[w]ithdrawal or alteration of administrative policies can moot an attack on those policies." *Id.* (quoting *Bahnmiller v. Derwinski*, 923 F.2d 1085, 1089 (4th Cir. 1991)). "A case 'cease[s] to be a live controversy if the possibility of recurrence of the challenged conduct is only a speculative contingency.'" *Id.* (quoting *Burbank v. Twomey*, 520 F.2d 744, 748 (7th Cir. 1975) (second quotation omitted)). Furthermore, other circuits have found that "legally compelled" cessation of conduct is not "voluntary" for purposes of the voluntary-cessation exception to the mootness doctrine. *Sea-Land, Inc. (Pac. Div.) v. Int'l Longshoremen's and Warehousemen's Union, Locs. 13, 63, & 94*, 939 F.2d 866, 870 (9th Cir. 1991) (citing *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984)).

With these principles in mind, the Court finds that it does not have jurisdiction to hear Claim Five because it is moot. Whether the voluntary-cessation exception could apply to these circumstances at all is questionable, given that USCIS was ordered by the court in *Dorcas I* to vacate the Policy Memoranda at issue here. Thus, USCIS's decision to treat the policies as though they are no longer in effect could hardly be said to have been voluntary. Moreover, the Court finds that there is no evidence on the record that USCIS intends to put the policies back in place, and thus whether the policies will ever

be enforced again is a speculative contingency. Indeed, Plaintiffs themselves agree that *Dorcas I* may narrow Claim Five, but argue that this should not impact Claims One and Two.[9] [#47 at 13] Accordingly, the Court respectfully RECOMMENDS that the Motion to Dismiss be GRANTED as to Claim Five and that Claim Five be DISMISSED.

### B. Preliminary Injunction Motion

The Court next turns to the Preliminary Injunction Motion. As the Court has recommended dismissal of Claims Three, Four, and Five, the Court considers only the merits of issuing a preliminary injunction with respect to Claims One and Two.

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)). In order to be entitled to entry of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, the moving party must establish that: "(1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if

[9] And, to the extent Plaintiffs seek to challenge PM-602-0199, it is unclear that Plaintiffs have standing to do so because it is unclear that PM-602-0199 caused a cognizable injury to Plaintiffs. Indeed, both parties note that it is unclear if PM-602-0199 even applies to Plaintiffs. [##38 at 6 n.1; 47 at 14] Furthermore, PM-602-0199 operates simply as a "reminder" to officers and the public that adjustment of status "is a matter of discretion and administrative grace not designed to supersede the regular consular processing of immigrant visas." PM-602-0199 at 1. Plaintiffs' alleged injuries occurred because a hold was placed on their benefit applications, not because USCIS reminded officers and the public that adjustment of status is discretionary. To establish standing, a plaintiff must show that: (1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury was likely caused by the defendant; and (3) the injury would likely be redressed by judicial relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs have shown neither that PM-602-0199 caused their injuries nor that vacating PM-602-0199 would redress their injuries. Accordingly, a challenge to PM-602-0199 cannot save Claim Five from dismissal.

issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits." *Id.* (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)). "[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Id.* (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Thus, there are "three types of specifically disfavored preliminary injunctions . . .: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* at 1259 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc), *cert. granted sub nom on other grounds, Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal,* 544 U.S. 973 (2005)). "Such disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" *Id.* (quoting *O Centro*, 389 F.3d at 975). With these principles in mind, the Court turns to the four requirements for a preliminary injunction and applies them to the facts of this case.

**1. Likelihood of Success on the Merits**

The parties make largely the same arguments when addressing this factor as they did when filing and responding to the Motion to Dismiss. [*See* ##33-1 at 3-8; 39 at 8-15] The Court therefore refrains from repeating itself and refers back to its prior analysis. Though Defendants argue that the Court lacks jurisdiction over Claims One and Two [#39 at 8-12], this argument is rejected for the reasons previously described. Defendants

again argue that Plaintiffs have failed to show unreasonable delay under the *Qwest* factors [*id.* at 12-15], which the Court also rejects for the reasons previously described.

The APA requires that federal courts compel agency action that is "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Plaintiffs request relief in the form of Defendants adjudicating their applications within 30 days of the Court's order. [#33-1 at 15] Plaintiffs do not ask the Court to dictate the outcome of their applications or to interfere with Defendants' ordinary adjudication processes or discretionary review procedures. [*Id.*] Rather, Plaintiffs take issue with the fact that their applications have been subjected to an adjudicative hold based on their nationalities and citizenship. And these adjudication holds directly led to a delay in agency action on Plaintiffs' CAA and EAD applications. Between the dates of December 2, 2025, and June 12, 2026, benefit applications filed by individuals from Cuba were all placed on hold. Plaintiffs thus could make no progress in the regular queue of applications for this duration, and for any additional duration that it may have taken the USCIS to place Plaintiffs' applications back in the regular queue following *Dorcas I*, if Plaintiffs have indeed been placed back into that queue.

The Policy Memoranda affecting Plaintiffs' applications have already been held to be unlawful and set aside, contrary to law, and arbitrary and capricious. *Dorcas I*, 834 F. Supp. 3d at 324 To make matters worse, some evidence suggests that the Benefits Hold Policy was motivated by hostility to foreign nationals and immigrants from particular countries that the current administration deems undesirable. *See Doe*, 836 F. Supp. 3d at 815 (collecting cases describing the administration's public statements regarding immigrants of particular nationalities and races). Indeed, it is difficult to reconcile USCIS's

stated concern for national security as prompting the Policy Memoranda when the following commentary was made by President Trump exactly one week following the issuance of PM-602-0192:

> We want to be honest because our country was going to hell. And we had a meeting and I said, *why is it we only take people from shithole countries*, right? Why can't we have some people from Norway, Sweden, just a few, let's have a few. From Denmark—do you mind sending us a few, send us some nice people, do you mind? But we always take people from Somalia; places that are a disaster, right? Filthy, dirty, disgusting, ridden with crime.

*Id.* at 793 (citing WNEP, *FULL SPEECH: President Trump Speaks in the Poconos*, at 1:25:03–1:26:21 (YouTube, Dec. 9, 2025), *available at* https://www.youtube.com/watch?v=JKXW5MnjKz4&t=1s (last visited October 28, 2026)). This statement, and the many other statements viewable on social media and collected by courts addressing similar issues, suggest impropriety underlying USCIS inaction on applications filed by individuals from certain countries. The Benefits Hold Policy, apparently influenced by these motives, are what led to Plaintiffs' applications being delayed six months at a minimum. Based on these facts, and the *Qwest* factor analysis previously described, the Court finds that Plaintiffs are likely to succeed on the merits of Claims One and Two.

**2. Irreparable Injury**

Plaintiffs argue that their irreparable injuries take several forms. [#33-1 at 13-15] For example, Plaintiffs fear arrest and removal by Immigration and Customs Enforcement ("ICE"), cannot travel to reunite with family abroad, and face loss of their ability to work lawfully in the United States. [*Id.*] Loss of ability to work would not simply result in lost wages, it would result in Plaintiffs losing the legal ability to work at all, which would

implicate their abilities to earn a livelihood, support their families, and remain self-sufficient. [*Id.*]

Other courts have found that this type of harm constitutes irreparable injury weighing in plaintiffs' favor of an injunction. *See, e.g., Sepehri v. Mullin*, No. 1:26-CV-239-HAB-ALT, 2026 WL 1678050, at *5 (N.D. Ind. June 9, 2026); *Doe*, 836 F. Supp. 3d at 825-26; *Red Eagle Law*, 2026 WL 2476424, at *5. In particular, courts note that while financial hardship alone may not normally constitute irreparable injury, the harm extends beyond ordinary economic injury when a plaintiff suffers not only lost wages but also potential loss of the legal ability to work at all. *Sepehri*, 2026 WL 1678050, at *5. These injuries involve loss of the fundamental ability to earn a livelihood, to support a plaintiff's family, and to remain self-sufficient. *Id.* This harm still exists even though the Policy Memoranda are vacated because there is uncertainty pending appeal. *Red Eagle Law*, 2026 WL 2476424, at *5. Though Defendants argue that Plaintiffs do not assert that their removal by ICE is likely and that simple economic loss usually does not itself constitute irreparable harm [#39 at 16], the Court agrees with Plaintiffs that the injury here goes beyond simple economic loss. Plaintiffs' individual work authorizations and status within the United States hang in the balance. This poses a risk to their future careers and their ability to support themselves and their families. Instability created by the Policy Memoranda may additionally subject Plaintiffs to deportation. Accordingly, the Court finds that this factor favors an injunction.

### 3. Balance of Equities and Public Interest

The balance of equities and the public interest factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Accordingly, the Court here considers these factors together.

Defendants argue that granting an injunction would be contrary to public interest because the Policy Memoranda were issued in the interest of national security and because Plaintiffs' requests for relief would merely place Plaintiffs ahead of other applicants in the line of individuals seeking similar benefits. [#39 at 16] Plaintiffs argue that they simply request that Defendants comply with their non-discretionary duty to adjudicate Plaintiffs' applications. [#33-1 at 15-16]

"[T]he public has no interest 'in the perpetuation of unlawful agency action.'" *Colorado v. Trump*, 823 F. Supp. 3d 1251, 1280 (D. Colo. 2026) (quoting *Minnesota v. U.S. Dep't of Agric.*, 826 F. Supp. 3d 975, 1007 (D. Minn. 2026)). Accordingly, the Court cannot find that Defendants have an interest in placing Plaintiffs' applications on an indefinite hold due to their countries of origin. And Defendants' national security interest argument is undeveloped and fails to point to any specific security concerns with allowing the adjudication of Plaintiffs' applications.

However, the Court agrees with Defendants that Plaintiffs' desired relief of adjudication of their pending applications within 30 days is improper. As previously described, the limited purpose of a preliminary injunction is generally to preserve the status quo pending a trial on the merits. *Schrier*, 427 F.3d at 1258. Plaintiffs are entitled to have their applications adjudicated in due course, not within a particular time frame.

This Court agrees with the other courts that have concluded that "the status quo consist[s] of the usual, though sometimes prolonged, processing and adjudication of Forms [I-765] within a reasonable time and without an adjudicatory hold in place." *Hedayati v. Edlow*, No. 26-cv-04054-VKD, 2026 WL 1970745, at *6 (N.D. Cal. July 7, 2026) (quotation omitted). This same rationale applies to Plaintiffs' I-485 applications. And Plaintiffs have cited no authority for the proposition that a 30-day adjudication deadline is consistent with the status quo absent the hold imposed by the Policy Memoranda. "In these circumstances, the Court concludes that an injunction prohibiting application of the hold imposed by the Policy Memoranda and directing USCIS to put plaintiffs back in the 'normal queue' best balances the equities and serves the public interest." *Id.* (citing *Sunny-Odio v. Trump*, No. 26-cv-04816-RFL, 2026 WL 1763854, at *2 (N.D. Cal. June 18, 2026); *Meschi v. Edlow*, No. 26-cv-01993-AGT, 2026 WL 1157151, at *2 (N.D. Cal. Apr. 29, 2026)). For that reason, the Court respectfully RECOMMENDS that the Motion for Preliminary Injunction be GRANTED in part. The Court specifically RECOMMENDS that USCIS be required to adjudicate Plaintiffs' I-485 and I-765 applications in the normal course of USCIS's process without delay based upon the fact that they are Cuban nationals and citizens.

## V. CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** that that the Preliminary Injunction Motion [#33] be **GRANTED IN PART AND DENIED IN PART** and that the Motion to Dismiss [#38] be **GRANTED IN PART AND DENIED IN PART**. The Court specifically **RECOMMENDS** that USCIS be required to adjudicate Plaintiffs' I-485 and I-765 applications in the normal course of USCIS's process without delay based upon

the fact that they are Cuban nationals and citizens and that Claims Three, Four, and Five be **DISMISSED**.[10]

DATED: October 28, 2026

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

[10] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).